**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 24-CR-110-PB** |
| **STACEY RAY LANCASTER** | |
| **Defendant.** | |

**United States' Sentencing Memorandum**

## I.    Introduction

Defendant Stacey Lancaster planned to pay $100 for 15-minutes of sex with who he believed to be a 12-year-old girl. He was arrested after showing up at the back of a hotel with $100 in cash.

On May 8, 2025, a jury found the defendant guilty of one count of Attempted Sex Trafficking of a Minor in violation of 18 USC §§ 1591(b)(1) and 1594. The jury also found that the offense involved a minor under the age of 14. The United States recommends that the Court sentence the defendant to 235 months of imprisonment (the low-end of the Guidelines range as calculated by the government), 5 years of supervised release, and a mandatory assessment of $100.

## II.    Factual Background

<u>The Operation</u>

The evidence at trial showed that beginning on November 13, 2024, Homeland Security Investigations (HSI) agents conducted an undercover operation aimed at identifying individuals attempting to pay for commercial sex with children. PSR ¶ 8. As part of the operation, agents posted an advertisement (the "Advertisement") on a website commonly used to advertise

1

commercial sex acts with images of what appeared to be two young females and language advertising them for commercial sex. *Id.* The Advertisement also contained a contact phone number (the "Advertisement Number"). HSI agents monitored the Advertisement Number and an undercover agent ("UC1") used it to communicate with potential sex buyers. PSR ¶ 9.

The Defendant

The defendant is a 47-year-old man who served in the United States Navy from 1999 until 2023. PSR ¶ 55. At the time of the offense in late 2024, the defendant was employed as a senior naval ROTC instructor at Manchester West High School. PSR ¶58. He also reported that he was simultaneously serving as a senior naval ROTC instructor at the John D. O'Bryant School of Mathematics and Science in Roxbury, Massachusetts. PSR ¶ 59. The defendant has a master's level education and was enrolled in graduate coursework at Northeastern University at the time of the offense. PSR ¶ 54.

The Offense Conduct

The defendant navigated to the Advertisement at approximately 6:42 AM on November 14, 2024. PSR ¶ 10. He navigated to the site again at 7:21 AM, at which time he contacted the Advertisement Number by sending a text message using the application TextNow Free, which allows users to send messages using a different phone number than the number typically associated with their phone plan. *Id.* The defendant wrote: "Hi are you available for a QV incall?"[1] After UC1 replied, the defendant stated that he could meet at 3:15 pm and asked if cash was "ok". UC1 then informed the defendant that she was offering a 12-year-old girl and shared a photo of the

---

[1] Each of the chat messages excerpted below are included at PSR ¶ 10.

2

purported 12-year-old. The defendant responded "Did you say she's 12? Are you being serious. That's really bad if that's true." UC1 then responded: "hun i dont force her.. she enjoys it. if this isn't ur thing its cool [wink emoji]". Several minutes later, the defendant asked: "Are you affiliated with any law enforcement." UC1 responded: "No!!! And i dont need trouble. r u with police?? if u are u gotta tell me!" The defendant responded: "I am not affiliated with any law enforcement." Eleven seconds later, he wrote: "Do you accept cash."

The chat conversation then continued, with the defendant asking UC1 if she had anyone older and UC1 providing a description and a photo of a purported 14-year-old girl. The defendant then negotiated to have a 15-minute commercial sex encounter with a 12-year-old girl at a local hotel in exchange for $100 in cash. He also asked to use a condom and said he was fine using condoms that UC1 would provide. After confirming these details, UC1 wrote: "lmk when ur ready hun n ill send u the hotel .. just no rough stuff bc shes only 12 but i got you down for 315pm. ill make sure shes ready for you [kissing and winking emoji]". The defendant responded "Ok" and then 27 minutes later wrote "On my way… where's it at."

UC1 provided the defendant the address of a hotel as the location of the encounter with the 12-year-old girl. UC1 then turned over communications to another undercover HSI agent ("UC2"). PSR ¶ 11. UC2 was posing as the person who posted the Advertisement and the user of the Advertisement Number. Video evidence was described that showed the defendant leaving West High at approximately 3:08 PM and sitting in his car outside the school until 3:12 PM. During that time, he was sending and receiving messages with UC2. *Id.*

Shortly thereafter, the defendant arrived at the hotel and pulled into the front parking lot.

3

PSR ¶ 12. While in the front lot, the defendant navigated to several commercial sex listings advertising services in the Boston area. The defendant was planning to travel to Boston later that afternoon to attend a graduate school class at Northeastern University. *Id.*

At approximately 3:24 PM, The defendant pulled his car into the back parking lot of the hotel. PSR ¶ 13. The defendant then met with UC2 in the back parking lot of the hotel and the two had a conversation. The entire interaction between UC2 and the defendant was audio and video recorded. *Id.*

The defendant had a conversation with UC2 and said "this is super strange" and he was "not used to … under-agers." PSR ¶ 14. UC2 responded: "I mean if it's not your thing we're not trying to push anybody to do something that like, you know, like, I mean, like I said I don't force 'em to do anything they don't wanna do." *Id.* The defendant then expressed concern about law enforcement, saying "I could go in there and it's like 'freeze! dadada' you know what I'm saying?" *Id.* After UC2 asked if the defendant was affiliated with law enforcement, the defendant denied it and he directed her to touch his groin area. PSR ¶ 15. After UC2 touched the defendant's groin area, the defendant asked, "Can I touch you?' He then touched UC2's breast over her shirt. *Id.* UC2 then repeated that she was not law enforcement. The two agreed that it was $100 for fifteen minutes with the girl. *Id.* After the defendant said that he wanted to go up to the hotel room, UC2 asked the defendant to show her that he had the cash. The defendant showed her cash. *Id.* The defendant confirmed he was willing to use a condom. *Id.* UC2 informed him that condoms were in the hotel room on the nightstand and that he could leave the money with the girl. The defendant was then arrested by law enforcement. He was carrying $100

in cash at the time of his arrest. *Id.*

Defendant's Testimony

At trial, the defendant testified that he intended to find an adult prostitute that day and to pay $100. PSR ¶ 16. He testified that when he was told that the girls being advertised were minors, he developed a plan to rescue the girl. ECF No. 55 at 17-47. He decided to continue negotiating to gather further information. *Id.* He stated that his intent in arriving at the hotel was to "play a role" to convince UC2 that he wanted to have commercial sex with the 12-year-old, but then he would go up to the room, put eyes on the 12-year-old, and then depart and call 911. *Id.* at 20, 24; PSR ¶ 16.

The evidence at trial showed that the defendant did not call the police, did not call 911, and did not report suspected child abuse to anyone on November 14, 2024. PSR ¶ 17. Additionally, Det. Mark Schmidt of the Manchester Police Department, who was the School Resource Officer at Manchester West High School, testified that he was present at the school that day wearing his police uniform and that the defendant never approached him with any concerns. *Id.*

The defendant acknowledged that he was a mandatory reporter by virtue of his employment and that he had received some level of training on the subject. ECF No. 55 at 104. He also discussed some relevant training on reporting human trafficking to law enforcement while serving in the U.S. Navy. *Id.* at 38. He admitted that he had no law enforcement training. *Id.* He also admitted that he had never investigated child trafficking and was not familiar with all the elements of such an investigation. *Id.* at 102.

5

### III.    The Charges and Verdict

On May 8, 2025, a jury found the defendant guilty of one count of Attempted Sex Trafficking of a Minor in violation of 18 USC §§ 1591(b)(1) and 1594.

### IV.    Statutory Penalties

The defendant faces up to life imprisonment, a term of supervised release of at least 5 years and up to life, a maximum fine of $500,000, and a mandatory special assessment of $100. The parties have briefed the issue of whether the fifteen (15) year mandatory minimum applies in this case. *See* ECF Nos. 52, 59, and 64. The United States maintains that a fifteen-year mandatory minimum applies for the reasons set forth in ECF Nos. 52 and 64.

### V.    The Sentencing Guidelines and Guidelines Analysis

The Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). The government objects that the PSR does not include a two-point enhancement under § 3C1.1 for obstructing or impeding the administration of justice, based upon the defendant's false testimony at trial. The Guidelines analysis, including this enhancement, are set forth below:

Count One: 18 USC §§ 1591(b)(1) and 1594

| | | |
|---|---|---|
| U.S.S.G. § 2G1.3 | Base offense level | 34 |
| U.S.S.G. § 2G1.3(b)(3)(B) | Use of Computer | +2 |
| U.S.S.G. § 3C1.1 | Obstruction | +2 |
| | **Total** | **38** |

With a criminal history category I, the defendant's guideline range should be 235 to 293 months of imprisonment.

A.  The Obstruction Enhancement Applies

The defendant testified, under oath, that he intended to rescue who he believed to be a 12-year-old victim (but did not intend to rescue who he believed to be a 14-year-old victim). The Sentencing Guidelines prohibit the application of the two-level adjustment merely based on a defendant's denial of guilt. See U.S.S.G. § 3C1.1, cmt. n.2. The enhancement applies "if a defendant exercises his right to testify at trial [and] commits perjury in the process." *United States v. Mercer*, 834 F.3d 39, 48 (1st Cir. 2016) (citing U.S.S.G. § 3C1.1, cmt. n. 4). To apply an obstruction of justice enhancement for perjury, the Court must make "findings that encompass all the elements of perjury -- falsity, materiality, and willfulness." *United States v. Nagell*, 911 F.3d 23, 30 (1st Cir. 2018) (citations omitted). Here, the defendant's testimony was false, material, and willful. The enhancement should apply.

The Defendant's Testimony was False

The defendant testified that his intent was to not engage in commercial sex with the child, but rather to go up to the hotel room to see the girl and then depart and call 911. PSR ¶ 16. This purported plan was not consistent with the defendant's chats with the undercover agent, which indicated a willingness to engage in the transaction. *See* PSR ¶ 10. It was not consistent with his interaction with the undercover agent in the parking lot, where he expressed nervousness about encountering law enforcement, PSR ¶ 14, and where he asked the undercover agent to touch his groin area and asked to touch her breast in an apparent effort to confirm that she was not police, PSR ¶ 15. It was not consistent with his browsing other commercial sex listings only moments before he was planning to enter the hotel to allegedly rescue the child. PSR ¶ 12. Finally, the

defendant's testimony that his intent was to help the child was inconsistent with the fact that he did not call the police, did not call 911, and did not report the advertisement to the Manchester West School Resource Officer, who was present at the school that day with the defendant while the defendant was chatting with the undercover agent. PSR ¶ 17.

A finding of falsity "does not require directly contradictory testimony but may spring from a solid foundation of circumstantial evidence." *Nagell*, 911 F.3d at 30 (cleaned up). In making this finding, the Court is afforded "reasonable latitude for credibility assessments." *Id.* (quoting *United States v. Shinderman*, 515 F.3d 5, 19 (1st Cir. 2008)). Here, the trial was replete with circumstantial evidence that the defendant's testimony was false. The jury found it to be so in rendering a verdict of guilty.

### The Defendant's Testimony was Material

Materiality is defined in the Guidelines as "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." *Nagell*, 911 F.3d at 30 (quoting U.S.S.G. § 3C1.1 cmt. n.6); *see e.g., United States v. Matiz*, 14 F.3d 79, 84 (1st Cir. 1994) (finding a statement material because "if believed, the jury would have acquitted [the defendant]"). Here, the defendant testified in that he did not intend to carry out the crime, a necessary element of attempted sex trafficking of a minor. His testimony was material.

### The Defendant's Testimony was Willful

Finally, the defendant's testimony was willful. He crafted a story intended to convince the jury that he lacked the requisite intent. The testimony about his plan to rescue one girl was deliberate and intentional. Indeed, he testified with great detail and certainty, and did not indicate

any significant lack of memory, confusion, or any ambiguity. The testimony was false, material and willful, and so the enhancement should apply.

    B.  <u>Probation Correctly Recommended the Use of Computer Enhancement</u>

The Court should apply the two-level specific offense characteristic for the defendant's use of a computer pursuant to U.S.S.G. § 2G1.3(b)(3)(A) or (B), because the defendant "use[d] a computer or an interactive computer service to (A) persuade, induce, [or] entice . . . the minor to engage in prohibited sexual conduct; or (B) entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor." The Sentencing Guidelines' definition of a "minor" includes "an individual, whether fictitious or not, who a law enforcement officer represents to a participant (i) had not attained the age of 18 years, and (ii) could be provided for the purposes of engaging in sexually explicit conduct." U.S.S.G. §2G1.3, cmt. n.1.

Here, the defendant used his cell phone to respond to an online commercial sex advertisement. PSR ¶ 10. He then used the TextNow application on his cell phone to communicate with an undercover agent both to: (A) persuade, induce or entice the fictitious minor to engage in prohibited sexual conduct; and to entice, by selling sex with the minor victim. *See* U.S.S.G. § 2G1.3, cmt. n.1 (cross-referencing §2A3.1 and defining "prohibited sexual conduct" as "any sexual activity for which a person can be charged with a criminal offense."). Because the facts of this case satisfy both prongs of §2G1.3(b)(3), the Court should apply the two-level enhancement.

**VI.    The Statutory Sentencing Factors Support a 235-Month Sentence**

The defendant's conduct was egregious, deliberate, and attempted to victimize whom he thought to be a vulnerable minor. The defendant is sophisticated and was in a position of trust as

a high school teacher when he attempted to victimize a child in his local community. A significant sentence is necessary to reflect the seriousness of the defendant's crime, promote respect for the law, deter others, and provide just punishment for the offense.

The defendant's intent and plan was egregious. He negotiated to engage in commercial sex with a 12-year-old child. While there was no actual child involved in this law enforcement sting operation, The defendant's chats, travel to the hotel, showing cash to the undercover agent, his concern about law enforcement—including having the agent touch his groin and touching her breast—strongly indicated that he believed there was a real child in the hotel that he was imminently planning to abuse. The crime was incredibly serious, and the evidence was overwhelming that the defendant intended to harm an actual 12-year-old child.

The conduct is all the more flagrant when considering that the defendant was employed as a teacher at Manchester West High School, that he worked with children every day, and that he was trained as a mandatory reporter of child abuse in his role as a teacher. The defendant was in the process of negotiating to abuse a child that day while he was at work in a school building. He had also served in the United States Navy for two decades. The defendant is someone who has held significant positions of public trust, including trust over children. He was trained to protect children but instead committed a serious crime targeting who he thought to be a young child for his own gratification.

Finally, a significant punishment is necessary to deter others. The defendant was apprehended as part of a sting operation which, the evidence at trial showed, garnered numerous responses from other customers and led to the arrest of multiple other individuals. This operation

was evidence of an unfortunately high level of interest in commercial sex with children. A significant sentence is necessary to deter others from engaging in similar conduct.

## VII.    Restitution

The United States is not seeking restitution in this matter.

## VIII.   Fine

The defendant's conviction subjects him to a statutory maximum fine of $500,000. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider The defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines require a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a) (2023). Here, the defendant has a negative net worth and does not appear to be able to pay a fine. *See* PSR ¶ 65.

The PSR notes that the Justice of Victims of Trafficking Act (JVTA) mandates an assessment of $5,000 under 18 U.S.C. § 3014. Since the time the PSR was written and today, however, the mandatory JVTA special assessment provision has expired (effective September 30, 2025). The provisions were re-enacted in November 2025, but were not made retroactive for crimes committed prior to that re-enactment. Therefore, the United States does believe the JVTA assessment of $5,000 applies in this case. Furthermore, it does not appear that the defendant has the means to pay the assessment and so it should not apply.

## IX.    Conclusion

For the reasons set forth above, the United States of America recommends that the Court

impose a sentence of 235-months of imprisonment, as well as five (5) years of supervised release,

and a mandatory assessment of $100.

Respectfully submitted,

ERIN CREEGAN
United States Attorney

By:   /s/ Matthew Vicinanzo
Matthew Vicinanzo
Anna Krasinski
Assistant United States Attorneys
United States Attorney's Office
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
(603) 225-1552
Matt.vicinanzo@usdoj.gov
Anna.krasinski@usdoj.gov

12