UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| _____ | ) | |
| UNITED STATES OF AMERICA | ) | 1:24-CR-00110-PB |
| | ) | |
| v. | ) | |
| | ) | |
| STACEY RAY LANCASTER | ) | |
| _____ | ) | |

### DEFENDANT'S SENTENCING MEMORANDUM
### AND MOTION FOR *BOOKER* VARIANCE

NOW COMES the Defendant, Stacey Ray Lancaster, by and through his counsel, Wilson, Bush & Keefe, P.C. ("the Defendant), and files this Sentencing Memorandum and Motion for *Booker* Variance, respectfully requesting that the Court sentence him to a term of 120 months of imprisonment, five (5) years of supervised release and a mandatory assessment of $100.00, along with the $5,000.00 monetary penalty.  In support thereof, Stacey states as follows:

This motion is predicated upon the Court's Standing Order on Procedure for Requesting Deviation from Sentencing Guidelines; 18 U.S.C. § 3553(a); United States v. Booker, 543 U.S. 220 (2005); Rita v. United States, 551 U.S. 338 (2007); Kimbrough v. United States, 552 U.S. 85 (2007); Gall v. United States, 552 U.S. 38 (2007); United States v. Jimenez-Beltre, 440 F.3d 514 (1st Cir. 2006), *cert. denied*, 127 S.Ct. 928 (2007); and their progeny.

### INTRODUCTION

On November 14, 2024, the government arrested Stacey as the result of a sting operation that began with a misleading Internet advertisement that led to an undercover federal agent posing as someone offering sex with juveniles in exchange for money.  On that

same date, he appeared in this Court for his initial appearance.  The Court temporarily detained him until November 18, 2024, when it released him on pretrial conditions after a detention hearing.

On November 20, 2024, the government obtained a one-count indictment charging Stacey with Attempted Sex Trafficking of a Minor in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(1), and 1594.

## TRIAL

This matter went to trial in May 2025.  On May 8, 2025, the jury found Stacey guilty of count one of the Indictment.

## BAIL STATUS

During his period of pretrial release, Stacey had only one instance of unauthorized leave while on electronic monitoring.

## NATURE AND CIRCUMSTANCES OF OFFENSE[1]

In November 2024, Homeland Security Investigations (HSI) continued a country-wide operation to identify people looking to have sexual encounters with juveniles as well as ensnare people who were not looking for such interactions.  Relevant to this matter, they posed a misleading advertisement on a website commonly used to advertise commercial sex acts.  The website strictly prohibited anyone under 18 from using that website.  Counsel asserted during this matter that the government sought to ensnare people in a crime who were looking for adult escorts.

---

[1] The presentence report does not summarize the evidence from trial, but it only refers to the discovery and a statement of facts provided by the government.  Thus, the presentence report is based upon the government's version of the evidence and not a fair recitation of the actual facts and evidence adduced at trial.  Ironically, the only evidence from the trial the presentence report discusses appears to be evidence provided by the government to rebut Stacey's testimony at trial.

The advertisement posted by the government included pictures of young-looking females. Both of the people pictured were 18 years old or older in the photograph(s). The government's witness agreed that the models used for these ads were used so they "could potentially" look underage. The agent also agreed that the language used in the advertisement was also used in advertisements for adults, and most of the escorts were adults on the website.

A review of Stacey's internet history on his phone on the day in question revealed that he did not set out seeking to engage in a sexual act with a minor. His search history also revealed at trial indicated he sought out that day to engage in a sexual encounter with an adult.

Importantly, the government's main witness at trial agreed that there did not exist any evidence that Stacey would have engaged in this crime but for the government engaging in this sting operation. Importantly for sentencing considerations, there were no underage girls that were being trafficked, there was no possibility of an actual sexual act or victim being harmed. A review of Stacey's phone and laptop revealed that he had no demonstrated prior interest in underage girls, although the government claimed in its search warrant affidavit in this case that people who have an interest in underage girls show that interest by having certain pictures and videos, looking at certain websites, and engaging chats with children. Stacey did not have or do any of those things. The Defendant submits that the government enticed Stacey to engage in this crime while avoiding legal entrapment.

During the text exchange with law enforcement, after asking for pictures of the escorts, Stacey did not express anything positive about the agent asserting the models were 14 and 12 years old. He recognized it was bad if that was true. He asked if there was

3

someone older during the text exchange.  He never proactively described a type of sexual act he may have wanted to engage in with the models.  When the agent asked him which of the two models he wanted, he said he did not care.  Thus, he did not proactively seek an interaction with the supposed 12-year-old, he told the agent to pick one.  Further, it was the agent who asked whether he wanted to use a condom.  In the end, it was the agent who set the price and the act.

When Stacey arrived at the location behind the hotel, he asked the agent to get into his car.  He then got out of his car and spoke to the agent.  It was the agent who pushed the conversation after Stacey said that this was weird for him; she said the fictitious person was ready and that the price was $100.00.  In response, Stacey asked if he could just go up and see the purported escort.  After the agent asked him if he had the money, and Stacey showing her, she again pushed the conversation by asking if he agreed to use a condom.  Counsel asks the Court to recall the last thing Stacey said on the recording admitted in evidence before the recording stops, "Ok … I mean, we can go up there … like … I'm just…."  These words do not reveal someone who was excited or in a hurry to engage in a sexual act with a minor.  Although the jury convicted him in this case, the evidence revealed someone appearing not to be fully committed to going through with the actual act.

<u>HISTORY AND CHARACTERISTICS OF DEFENDANT</u>

Stacey is 48 years old, is married, and has children.  He was born in Las Vegas and had three half-siblings.  Stacey's mother raised him by herself in a mobile home.  Sadly, two of his half-siblings have passed.  Both of his parents are still alive, but he unfortunately does

not have a relationship with his mother anymore.  Their relationship deteriorated not because of the allegations in this case, but because of her political beliefs.[2]

Stacey grew up like many children with single parents in this country.  He went to school, played sports, worked, engaged in community activities, and had fun.  After he graduated high school, he wanted to serve his country.  As such, he enlisted in the United States Navy.  Stacey's time in the Navy will be discussed further herein.  He received a degree in history from the University of Maryland in 2007.  He also earned a master's degree from American Military University in Homeland Security in 2013.  At the time of his arrest, Stacey was enrolled in a master's of business administration program at Northeastern University.

Stacey first married in 2007, and he had two children with that woman.  Stacey separated from that woman in 2019 due to irreconcilable differences, and they divorced in 2021.  His ex-wife and children live in Bahrain where she was living when Stacey met her.  Due to distance, his relationship with his ex-wife, and this matter, Stacey has not spoken with his two children in Bahrain for quite some time.  As reflected in his military records, this has caused Stacey great emotional harm since his ex-wife left with their children.

Stacey married his current wife in December 2021.  She had two children prior to meeting Stacey, and Stacey treated and raised them as if they were his own children.  The family resides in a home they owned in Hudson, New Hampshire.  Stacey had to live in a hotel for a large period of time while on pretrial supervision.

---

[2] The presentence report notes that Stacey's father has a criminal record and is a registered sex offender.  Although having no legal basis to object to the inclusion of this information, including such information here is entirely gratuitous.  This is especially true as Stacey informed probation that he did not have contact with his father growing up and met him when Stacey was 20 years old.

During his military career, Stacey suffered multiple physical and health issues including hearing loss, tinnitus, dry eyes, sleep apnea, sleep disorder, asthma, chronic neck/back/knee pain, as well as mental health concerns.  In either 2020 or 2021, Stacey was diagnosed as having anxiety, depression, and post-traumatic stress disorder from witnessing the effects/casualties of missile strikes, as well as being involved in and monitoring rescue operations in the Middle East.  He attended therapy and received medications, including Prozac, throughout his treatment.[3]  Stace continued his counseling for a time after being honorably discharged from the military.  After his arrest here, he attended individual and family counseling.

Of note, due to an ACL surgery, Stacey unfortunately succumbed to Opioid usage, and he abused that substance to a point where he was taking four-to-seven Oxycontin pills per day in the months leading up to his arrest.  Although the presentence report finds it notable that neither Stacey's wife or mother knew about this, one is well aware that people in Stacey's station in life would do everything possible to hide such drug use from family members.

Stacey served in the United States Navy from July 1999 until his honorable discharge as a lieutenant commander in August 2023.  During his pretrial supervision, Stacey worked at Frito Lay in Londonderry, New Hampshire, as well as Good Year Tire in Nashua, New Hampshire.  At the time of his arrest, Stacey worked as the senior Navy ROTC instructor at Manchester West High School.  Prior to that, he held a similar position at a high school in Roxbury, Massachusetts.

---

[3] Counsel only recently received Stacey's medical records from the United States Navy.  Counsel can make them available to the Court or government if needed for review.

Stacey spent the vast majority of his adult life serving his country.  He received an Honorable Discharge upon his retirement from the United States Navy on August 18, 2023.[4] Stacey finished his career as a Battle Watch Captain for Commander, U.S. Naval Forces Central Command.  He held that post since October 2019.  Prior to that he acted as a Fleet Watch Officer for Commander in September 2019.  Prior to that, he acted as a Battle Watch Captain for a destroyer squadron, Command Senior Watch Officer, Tactical Action Officer, Ship's Navigator, Officer of the Deck, Engineering Officer of the Watch, Command Duty Officer, Navigator, Anti-Terrorism Tactical Watch Officer, Surface Warfare Officer, Officer of the Deck, Combat Information Center Watch Officer, Command Historian, Midshipmen Training Coordinator, Alternate EKMS Manager, Command Fitness Leader, Command Sponsor Representative, and Enlisted Aviation Warfare Specialist.

A review of Stacey's Fitness Reports and Counseling Records reveal that Stacey routinely performed above standards or greatly exceeded standards in all positions he held in the Navy.  He consistently received ratings of four or five (out of a highest of five) in professional expertise, command or organizational climate, military bearing and character, teamwork, mission accomplishment and initiative, leadership, and tactical performance. Stacey received praise from nearly all commanding officers for his character, work ethic, and ability.

During his career, Stacey received many awards.  Those awards are the Navy and Marine Corps Commendation Medal (x8 for the various positions he held), petty officer of the month, as well as a Letter of Commendation as a personnelman second class for service

---

[4] Stacey provided counsel with documents to verify all assertions made about his military career. Again, these documents can be made available to the Court or government for review.

to the Commander of the United States Atlantic Fleet.  Additionally, Stacey obtained many certificates during his time in the Navy reflecting his continuing growth as a midshipman, person, and leader.  Those include the Maritime Operational Planner's Course and the Maritime Staff Operators Course at the United States Naval War College, Minesweep Sailor, Surface Warfare Officer Department Head, Diesel Engineering, Bridge Resource Management, Combat Systems Common Core, Master Training Specialist, College of Distance Education Command and Staff, Journeyman Instructor, Navigator Quartermaster, Command Display and Control Operator, Bridge Resource Management, Electronic Key Management System, NAVPERSCOM, Navy Command Fitness Leader, Seaman to Admiral, Second Class Petty Officer Leadership, Navy Standards Integrated Personnel System, Shipboard Firefighting, and Personnelman A.

These honors and achievements reflect the character of a person who not only dedicated his life to service of his country but hard work, integrity, and a commitment to honor.

However, because of Stacey's personal circumstances, along with his experiences in defense of our country, he experienced physical and mental strain.  Counsel has recently (and finally) obtained certain medical records from the Veterans Administration.  These records document and confirm Stacey's physical and mental health problems described to probation, to include PTSD from his active-duty deployments, anxiety, depression, and monitoring and counseling regarding therapeutic drug level monitoring.  These records also confirmed that Stacey engaged in counseling due to his mental health diagnoses.  There he received a diagnosis of an Adjustment Disorder (disorder of mood and conduct), and a psychiatrist prescribed to him Lexapro and Remron.  The doctor found that Stacey's life stressors at the

end of his military career, coupled with his ex-wife moving back to Bahrain with his children, caused him substantial stress and contributed greatly to his mental health diagnoses.

## STATUTORY MIMIMUM SENTENCE

For the reasons the Court previously raised during post-trial hearings and conferences in this matter, the Court should not apply a 15-year mandatory-minimum sentence.[5] The only mandatory minimum sentence that should apply in this matter is the 10-year mandatory-minimum sentence.

## ADVISORY GUIDELINE SENTENCING RANGE

Stacey has no prior criminal record, establishing a criminal history category (CHC) of I.  The Defendant technically agrees with the guideline calculation contained in the presentence report.  However, as is the recognized custom in this Court, the Defendant will seek a distinct variance of a two-level reduction in offense level to compensate for the two-level increase in his offense level for using an interactive computer service.  The use-of-computer enhancements in U.S.S.G. §§ 2G1.3(b)(3) and 2G2.2(b)(6) violate the Fifth Amendment Due Process Clause.  Thirty years ago, the Internet was new, and Congress may have had a rational basis for that enhancement.  Today, however, there is no rational basis for that enhancement— technology changes have made it arbitrary because it applies in most cases and is unrelated to a legitimate governmental purpose.  Virtually every person who participates in society, including many unhoused people, have cellular telephones that qualify for this enhancement.  Of note, the government set its trap in this case by posting an advertisement on the Internet.  Use of a cellular telephone to access the Internet and

---

[5] The Defendant recognizes that the Court has not made a ruling on whether the 15-year mandatory minimum sentence applies, but it has raised possible reasons it would not apply in this matter.

communicate with people has not simply become commonplace in today's society, it has become the primary means of communication for many (if not most) of first-world societies. Thus, in substance, before any non-guideline related variances, the Court should consider the applicable guideline range to be 151-188 months.

The government overly-aggressively seeks not only for the Court to adopt the use-of-computer enhancement, but it also incorrectly seeks to apply the obstruction-of-justice enhancement.  Although Stacey testified at trial, and the jury found him guilty, it is a non-sequitur to equate that with a finding of perjury.  The jury could have found that Stacey intended to solicit a person someone to engage in a commercial sex act, as opposed to finding that he would have gone through with the act if presented with a real victim and the physical opportunity to complete such a crime.

The government relies upon *United States v. Mercer, 834 F.3d 39 (1st Cir. 2016)*. There, the First Circuit conducted a plain error review, and it confirmed that the objective evidence offered at trial contradicted the specific statement at issue – that Mercer had not received drugs from another individual.  That specific fact was contradicted by other evidence in that case.  More so, the First Circuit cited in strong support of it upholding the trial court's finding that the PSR made such a finding, and Mercer did not challenge it.

Here, the PSR did not make such a finding.  Further, there was no direct evidence to contradict Stacey's statements about his intentions when he agreed to the exchange or to go into the hotel.  Only Stacey knows what was in his mind.  As well, such an enhancement would unconstitutionally punish Stacey for testifying in his own defense – for exercising his constitutional right.

In this regard, the government bears the burden of proving the facts underlying its

10

sentencing enhancement recommendation by a preponderance of the evidence.  United States v. Cannon, 589 F.3d 514, 517 (1st Cir. 2009) ("Where, as here, a defendant challenges the factual predicate supporting the district court's application of a sentencing enhancement, 'we ask only whether the court clearly erred in finding that the government proved the disputed fact by a preponderance of the evidence.'" (quoting United States v. Luciano, 414 F.3d 174, 180 (1st Cir. 2005)).  Section 3C1.1 of the Guidelines calls for a two-level enhancement "[i]f … the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction."   U.S.S.G.  §3C1.1.  Application Note 4 lists perjury among the sorts of conduct this enhancement is intended to cover.  U.S.S.G. § 3C1.1, cmt. n.4(B). The Supreme Court has adopted the federal definition of criminal perjury to serve as the meaning of perjury in this context, defining it as "[giving] false testimony [under oath] concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993) (citing 18 U.S.C. § 1621(1)).

The sentencing enhancement for perjury, however, "is not intended to punish a defendant for the exercise of [his] constitutional right" to testify.  U.S.S.G.  § 3C1.1, cmt. n.2; see also Dunnigan, 507 U.S. at 95 ("[N]ot every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury.").  "The enhancement does apply, however, if a defendant exercises his right to testify at trial but commits perjury in the process." United States v. Mercer, 834 F.3d 39, 48 (1st Cir. 2016) (citing U.S.S.G. § 3C1.1, cmt. n.4). The enhancement should not be applied mechanically "merely because an evidentiary conflict exists or because the jury rejects the defendant's

11

explanation of the facts and finds him guilty." United States v. Gobbi, 471 F.3d 302, 314 (1st Cir. 2006) (citing United States v. Akitoye, 923 F.2d 221, 228-29 (1st Cir. 1991)).

Instead, in order to apply an obstruction of justice enhancement for perjury, the sentencing judge has to make "findings that 'encompass all the elements of perjury -- falsity, materiality, and willfulness.'" Mercer, 834 F.3d at 49 (quoting United States v. Matiz, 14 F.3d 79, 84 (1st Cir. 1994)). "A sentencing court, however, is not required to address each element of perjury in a separate and clear finding." Id. (quoting Matiz, 14 F.3d at 84). A single finding of perjury is sufficient to uphold the lower court's sentencing enhancement for obstruction of justice. United States v. D'Andrea, 107 F.3d 949, 959 (1st Cir. 1997). A finding of falsity "[does] not require directly contradictory testimony but may spring from a solid foundation of circumstantial evidence." Akitoye, 923 F.2d at 229.

Here, if the Court were to apply this enhancement, it would be punishing a defendant for the exercise of his constitutional right to testify. This is a precise situation where not every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury. Although not required here, the Court should keep in mind that there did not exist any objective contradictory evidence to the purported perjury. The Court should not apply this enhancement.

## VARIANCE

Stacey moves for a variance from the total offense level found in the PSR. Such a variance may be premised on the following: the Court's Standing Order on Procedure for Requesting Deviation from Sentencing Guidelines; 18 U.S.C. § 3553(a); United States v.

12

Booker, 543 U.S. 220 (2005) (making the U.S.S.G. advisory only)[6]; Rita v. United States, 551 U.S. 338, 127 S.Ct. 2456 (2007); Kimbrough v. United States, 522 U.S. 85, 128 S.Ct. 558 (2007); Gall v. United States, 522 U.S. 38, 128 S.Ct. 586 (2007); United States v. Jimenez-Beltre, 440 F.3d 514 (1st Cir. 2006), *cert. denied* 127 S.Ct. 928 (2007).

In light of the fact that the U.S.S.G. are now only advisory, this Court may now consider those mitigating factors that the advisory guidelines prohibit: e.g., poverty, racial discrimination and humiliation, drug abuse and addiction, dysfunctional family background, lack of guidance as a youth, etc. See United States v. Ranum, 353 F.Supp.2d 984 (E.D. Wisc. 2005) ("The guidelines' prohibition of considering these factors cannot be squared with the Section 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant.'"); United States v. Myers, 353 F.Supp.2d 1026 ((S.D. Iowa, 2005) ("The guidelines prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant....Thus, in cases in which a defendant's history and character are positive, consideration of all of the § 3553(a) factors might call for a sentence outside the guideline range."); United States v.

---

[6] The sentencing factors which Booker requires the district courts to consider include:
    (1)  the nature and circumstances of the offense and the history and characteristics of the defendant [§3553(a)(1)];
    (2)  the need for the sentence imposed-
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes by the defendant; and
        (D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner [§3553(a)(2)];
    (3)  the kinds of sentences available [§3553(a)(3)];
    (4)  the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range [§3553(a)(4) and (5)];
    (5)  the need to avoid unwarranted sentencing disparity among defendants with similar records that have been found guilty of similar conduct [§3553(a)(6)]; and
    (6)  the need to provide restitution to any victims of the offense(s) [§3553(a)(7)].

Jaber, 362 F.Supp.2d 365 (D. Mass. 2005) ("*Booker* plainly allows courts to look carefully at those factors and to determine to what degree they are relevant to individual cases").

As well, Congress had directed that the district court "shall impose a sentence **sufficient, *but not greater than necessary***, to comply with [the purposes of sentencing]" (emphasis added). 18 U.S.C. § 3553(a) (emphasis added). This is the "primary directive" of the sentencing statute. Ranum, 353 F.Supp. 2d at 986; United States v. Pirani, 406 F.3d 543, 564 (8th Cir. 2005) (Bye, J., dissenting) ("factors previously deemed ordinarily irrelevant to sentencing under Chapter 5H of the guidelines such as the defendant's age, education and vocational skills, mental and emotional conditions, physical condition, employment record, family ties and responsibilities, and charitable service are now valid considerations for a court in imposing a sentence").

Arguably, no special weight is to be given to the advisory guidelines or other factors mentioned in the statute. See United States v. Okai, 2005 WL 2042301 (D. Neb. August 22, 2005) ("The Guidelines range is thus one of many factors for the sentencing court to consider, and although the court is not bound by the Guidelines, it must consult them and take them into account when sentencing."); Pirani, 406 F.3d at 564 ("in addition to consideration of the guideline range the court must give equal consideration to sentencing factors such as just punishment, deterrence, incapacitation, rehabilitation, and the need for the sentence to reflect the nature and circumstances of the offense and the history and characteristics of the defendant"); Jaber, 362 F.Supp.2d at 365 (advisory does not mean "slavish application of the Guidelines under the guise of fair "consideration"); United States v. Moreland 366 F.Supp.2d 416 (S.D. W.Va. 2005) ("while I respect the advice of the Guidelines and give it serious consideration, I do not view that advice as carrying greater

14

weight than any of the other § 3553(a) factors"); United States v. Biheiri 356 F.Supp.2d 589 (E.D. Va. 2005) ("no individual factor is singled out as having greater weight; instead, the richness of factual diversity in cases calls on sentencing judges to consider all of the factors and to accord each factor the weight it deserves under the circumstances.").

There are a substantial mitigating factors that call for the sentence requested here. This Court may now consider those mitigating factors that the advisory guidelines prohibit: e.g., poverty, racial discrimination and humiliation, drug abuse and addiction, dysfunctional family background, lack of guidance as a youth, etc. See United States v. Ranum, 353 F.Supp.2d 984 (E.D. Wisc. 2005), *et seq.* (infra).  Also, the Defendant here notes that many courts believe that the Sentencing Guidelines are generally too harsh.  See August 9, 2003 Speech of Justice Anthony Kennedy at the ABA Annual Meeting (available at **http://www.abanews.org/kencomm/amkspeech03.html**) ("Our resources are misspent, our punishments too severe; our sentences too long... the sentencing guidelines are responsible in part for the increased terms.... [and they] should be revised downward."); Ranum**,** 353 F.Supp. 2d at 985 n.1 (quoting Justice Kennedy's statement that "our punishments [are] too severe, our sentences too long")**;** United States v. Antonakopoulos 399 F.3d 68, 81 (1st Cir. 2005) ("History shows that the mandatory nature of the Guidelines has produced particular results which led trial judges to express that the sentences imposed were unjust, grossly unfair, or disproportionate to the crime committed, and the judges would otherwise have sentenced differently."); Montanye v. United States, 77 F.3d 226, 233 (8th Cir. 1996) (Bright, J., dissenting) ("By any ordinary measure outside the guidelines, I would think this sentence would be considered draconian, unnecessarily harsh and unreasonable."); United States v. Andruska, 964 F.2d 640, 646-47 (7th Cir. 1992) (Will, Senior Judge, concurring)

15

("the irrationality and draconian nature of the Guidelines sentencing process is again unhappily reflected in this case").

Stacey is approaching 50 years old and has no criminal convictions.  Although he is not allowed any offense level reduction under the guidelines for being a zero-point offender, the Court may and should recognize the fact that he is nearly 50 years old and does not have a criminal record.  See United States v. Paul, 561 F.3d 970 (9th Cir.  2009) (where defendant convicted of embezzlement and guidelines 10-16 months, court's within guideline sentence of 15 months unreasonably high in part because Paul was a first-time offender with no criminal record whatsoever); United States v. Autery, 555 F.3d 864 (9th Cir. 2009) (where defendant convicted of poss. of child pornography and where guidelines 41-51 months, court's sua sponte variance to probation not unreasonable in part because defendant's first conviction and Crim. History Level I "did not fully account or his complete lack of criminal history" because defendant with minor criminal history still falls in category I);  United States v. Huckins, (10th Cir. 2008) 529 F.3d 1312 (where defendant convicted of possession of child pornography and guidelines 78-97 months, court's variance to 24 months proper in part because this was  defendant's first conviction --rejecting government's argument that guidelines already considered this by placing defendant in Crim. Cat. I.); see also USSC's own research suggesting that that proper application of 3553(a) in the case of a "true" first offender now strongly supports a below-guideline variance because of 3553(a)(2)(C) and in 3553(a)(6); Report of USSC (May 2004) "*Recidivism and the 'First Offender*',"  ("The analysis [of empirical data on re-offending] delineates recidivism risk for offenders with minimal prior criminal history and shows that the risk is lowest for offenders with the least experience in the criminal justice system. Offenders with zero criminal history points have

16

lower recidivism rates than offenders with one or more criminal history points.  Even among offenders with zero criminal history points, offenders who have never been arrested have the lowest recidivism risk of all.").

As well, given that Stacey has no criminal record, he has thus never been incarcerated before until the finding of guilty in this matter, any period of incarceration – especially a 10-year sentence – will be more impactful on Stacey.  This Court may also recognize that as a downward variance.  See United States v. Paul, 2007 WL 2384234 (9th Cir. Aug. 17, 2007) (unpub.) (within guideline sentence of 16 months (high end) for taking government money unreasonably high in part because Paul was "a first-time offender with absolutely no criminal record whatsoever"); United States v. Baker, 445 F.3d 987 (7th Cir. 2006)  (in distribution of child pornography case, court affirms below guideline sentence of 78 months (guidelines called for 108) noting that  "significant is the district court's finding that a prison term would mean more to Mr. Baker than to a defendant who previously had been imprisoned. Consideration of this factor is consistent with§ 3553's directive that the sentence reflect the need for "just punishment," id. § 3553(a)(2)(A), and "adequate deterrence," id. § 3553(a)(2)(B)"); United States v. Santoya, 493 F.Supp.2d 1075 (E.D. Wisc. 2007) (in distribution of cocaine case where defendant was career offender, below guideline sentence appropriate because a lesser period of imprisonment necessary to deter a defendant who has not previously been subject to lengthy incarceration and where "the sentencing commission has acknowledged that when career offender status is based on relatively minor drug offenses, the guidelines may create a sentence greater than necessary");  United States v. Willis, 479 F.Supp.2d 927 (E.D.Wis. 2007) (in drug case where guideline range was 120 months but statutory maximum was 60 months, sentence of one year and one day sufficient

in part because sentence "sentence provided a substantial punishment for someone like defendant, who had never before been to jail and who engaged in no violence or dealing herself").

This Court should also grant the requested variance because Stacey has devoted his professional life to public service by serving honorably and exceptionally in the United Staes Navy.  See United States v. Libby, (Where Scooter Libby  convicted of perjury and obstruction of justice and receives 30- month guideline sentence, President Bush commutes prison time in part because conviction is "harsh" where "the reputation he gained through his years of public service and professional work in the legal community is forever damaged [and where] the consequences of his felony conviction on his former life as a lawyer, public servant and private citizen will be long-lasting.") (found at http://www.washingtonpost.com/wpdyn/content/article/2007/07/02/AR2007070201463.html ?sub=new); United States v. Lynne Stewart, (S.D.N.Y. Oct. 16, 2006, No. 02-395) (where defendant convicted of providing support to terrorists and where guidelines called for 30 year sentence, district court imposes sentence of 28 months in part because of defendant's life-long career as attorney devoted to defense of poor and the oppressed for little money); United States v. Carter, 530 F.3d 565 (7th Cir. 2008)  ("The guidelines are one factor among those listed in 18 U.S.C. § 3553(a), and regardless of whether courts have previously recognized public service as a ground for departure from the Guidelines, sentencing courts are charged with considering as part of the § 3553(a) factors "the history and characteristics of the defendant," which would include a defendant's public service. § 3553(a)(1)).

See also Porter v. McCollom, 558 U.S. 30, 130 S.Ct. 447 * (Nov. 30, 2009) ("Our Nation has a long tradition of according leniency to veterans in recognition of their service,

18

especially for those who fought on the front lines as Porter did"); <u>Kimbrough v. United States</u>, 552 U.S. 85 (2007)  (in case of conspiracy to distribute crack and use of gun, district court not unreasonable in giving below guideline sentence to mandatory minimum of 15 years  where courted noted that defendant "had served in combat during Operation desert Storm and received an honorable discharge from the Marine Corps");  <u>United States v. Howe</u>, 543 F.3d 128 (3rd Cir. 2008) (where defendant convicted of mail fraud with loss of $150,000 and guidelines 18-24 months, sentence of probation with 3 months home detention not unreasonable in part because of Howe's twenty years of military service followed by honorable discharge.).

Additionally, Stacey has engaged in substantial post-charge and post-conviction rehabilitation.  After his arrest, Stacey engaged in both personal and couples counseling.  As well, he has engaged in much rehabilitation as possible since his incarceration at the Merrimack County Department of Corrections.  While there, he completed the following programs:  Veterans Behind Bars; Prison Professors Mini Master Class (programs one through four); The Freedom Fight Sex Addiction Recovery Program; Healing from Child Sexual Abuse Program; Human Trafficking in the United States:  The Truth of What You Can Do About It; Preparing for Success After Prison; Earning Freedom; and, Thinking for the Future; Developing your Emotional Intelligence.

Stacey Lancaster is not just the person who committed this offense or is otherwise biographically described herein.  He is a human being, comprised of humanity, good works, friendship, love, loyalty, and compassion.  Despite his conviction here, people in his life, who have known him for a long time, stand by him and support him.  Attached hereto as

19

Exhibit A are letters of support for Stacey from those who know him.  These letters are reflection of the man he has been in his life, and they include such statements as:

- He is kind, patient, and supportive person;

- A devoted provider and caregiver who has always tried to do right;

- His crime is not a reflection of who he is;

- He demonstrated through his faith a desire to grow spiritually and morally;

- He demonstrates respect, thoughtfulness, and a strong sense of personal responsibility;

- He carries himself in a manner that reflects strong values and accountability;

- He is reliable, attentive, kind, and humble;

- He is calm, steady, and thoughtful; and

- He is a devoted family man who cares deeply about people.

## CONCLUSION

Stacey appears before this Court with no criminal record, a lifetime of service to his country, who did not set out on the day in question to commit a crime.  It is reasonable to believe that he would not have been lured into this offense had the government laid a trap and led him down the so-called primrose path.  He recognizes the jury's finding of guilty, but counsel reminds the Court that this offense could very well encompass merely solicitation as opposed to a desire to ultimately commit a sexual act if given the actual opportunity.  Counsel reminds the Court of the last words Stacey spoke on the recording prior to his arrest when the undercover agent said they could go up to the room, ""Ok … I mean, we can go up there … like … I'm just…."  These words do not reveal someone who was excited or in a hurry to engage in a sexual act with a minor.  Although the jury convicted him in this case,

the evidence revealed someone appearing not to be fully committed to going through with the actual act.

Given the severe mandatory minimum sentence of 10 years in this case, such a punishment would encompass defendants who have a documented history of pedophilia and actively sought out to have sexual intercourse with a minor, as well as those people like Stacey – who did not set out that day to engage in any interaction with a minor. Just as much, the Court should take into consideration that no actual minor was ever in danger of being sexually assaulted.

When the Court considers the specifics of this offense, and this specific defendant, a sentence of 120 months with five years of supervised release is sufficient but not greater than necessary to effectuate all the factors identified in the sentencing statute.

WHEREFORE, the Defendant, Stacey Lancaster, respectfully requests that the Court impose a sentence of 120 months of imprisonment, five (5) years of supervised release and a mandatory assessment of $100.00.[7]

Date:  April 17, 2026                              Respectfully submitted

                                                   /s/ Charles J. Keefe
                                                   Charles J. Keefe, Esq.
                                                   NH Bar ID: 14902
                                                   378 Main Street
                                                   Nashua, NH 03060
                                                   603-595-0007
                                                   keefe@wbdklaw.com

---

[7] Stacey acknowledges that there is a mandatory monetary penalty of $5,000.00.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing motion was this date forwarded to all counsel of record through ECF.

January 26, 2026                                    /s/ Charles J. Keefe
                                                   Charles J. Keefe, Esq.